Julius A. Penn and Wife, Plaintiffs in Error, *v.* David W. Heisey, Defendant in Error.

### ERROR TO EDGAR.

If it appears that the land of a deceased party was regularly sold by a guardian, by authority of law, though the sale was not confirmed, but no complaint appears against the fairness of the transaction, the monies having been faithfully applied —a part in the acquisition of other lands, which the children subsequently conveyed—the minors will be estopped in equity, after long acquiescence, from proceeding in ejectment to recover the land sold by the guardian, from an innocent purchaser, not immediately connected with that sale.

This was a proceeding instituted on the chancery side of the Edgar Circuit Court, by David W. Heisey against Julius A. Penn and Eliza C. Penn, John C. Minor, Thomas Brock, Catharine Brock, St. Clair Sutherland, and George Stein.

The bill alleges title to lot No. 33, in the town of Paris, in Edgar county, by purchase from said George Stein, who purchased of St. Clair Sutherland, who purchased from one James Hall, who held a sheriff's certificate of purchase for the same for the use of the president, directors and company of the Bank of Illinois, who obtained judgment against John Sutherland, who had purchased said lot from one Gideon Minor, guardian of the minor heirs of Oliver Minor, deceased.    That the said Julius A. Penn, who has intermarried with Eliza C. Minor, one of the wards of said Gideon Minor, and heiress of said decedent, Oliver.    That, notwithstanding the sale by guardian, the said Julius A. Penn, in right of his wife Eliza, had instituted suit to recover possession of said lot, denying said complainant's title thereto, and concludes with a prayer that Julius A. Penn and Eliza C. Penn be enjoined, etc., from further proceeding in

their suit in ejectment, and that a commissioner be appointed to execute to said David W. Heisey a proper deed of conveyance for said lot, and that said title be quieted, etc.

This bill was accompanied with various exhibits as set out in the record, being copies of deed from Gideon Minor, guardian, etc., to John Sutherland; the deed of conveyance from the sheriff of Edgar county to St. Clair Sutherland; the deed of St. Clair Sutherland to George Stein, and the conveyance from George Stein to David W. Heisey.

Summons was served on Thomas Brock, and Julius A. Penn and Eliza C. Penn, George Stein and John E. Minor, were brought in by publication, there appearing in the record no notice to or service on Catharine Brock or St. Clair Sutherland, although a guardian *ad litem* was appointed for Catharine Brock, who filed his answer, October 20th, 1854.

An order, stating that a demurrer was filed by the adult defendants in court, (except John E. Minor,) appears in the record.

Afterwards, at the April term, A. D. 1855, of the Edgar Circuit Court, a demurrer was filed by defendants.

This demurrer was afterwards, at the April term, A. D. 1856, of said court, overruled.

At the October term, A. D. 1856, defendants, Julius A. Penn and wife, answered said bill, the oath thereto being waived, generally denying the allegations of the bill, and the cause was heard upon bill, answer, depositions, exhibits and oral evidence, reduced to writing at the time, and certified by the judge of the court, and a decree rendered, enjoining all the parties to the bill, etc., from prosecuting the suit to recover the possession of lot 33, in the town of Paris, and that the suit of Penn and wife, then pending therefor, be dismissed, at their costs, and quieting the title of Heisey thereto.

Defendants excepted to said decree, and filed their bill of exceptions.

The bill of exceptions contains the evidence in the cause, as certified by the court.

This writ is prosecuted by the defendants to reverse the decree rendered in the cause as aforesaid.

C. H. CONSTABLE, for Plaintiffs in Error.

O. B. FICKLIN, for Defendant in Error.

BREESE, J.   The facts in this case show that a certain lot, in the town of Paris, in Edgar county, belonging to Oliver Minor, deceased, and now in controversy, was regularly sold under the

authority of the laws of this State, by Gideon Minor, guardian of the infant children of said Oliver, of whom, Eliza Penn, plaintiff in error, is one, but that no report of the sale was made to the court, and no order entered, confirming it.

We have decided, in several cases, that such sales are void, and that no title passed to the purchasers. *Young* v. *Keogh*, 11 Ill. R. 642; *Ayers* v. *Baumgarten*, 15 Ill. R. 444.

The lot, since the sale, has passed through several parties, and is now in the actual possession of the defendant in error, he being a *bona fide* purchaser, for a valuable consideration, without notice of any defect in the title.

On ejectment, brought by plaintiffs in error, to oust him under their legal title, he filed a bill for an injunction, and for general relief, setting forth, among other things, the order of sale of the lot by the court, and sale thereon by the guardian, the application of the proceeds, and the settlement of his accounts, as guardian, with the Probate Court of Edgar county, in which he had charged himself with the proceeds of this sale, and claimed, and was allowed, a credit for their disbursement, which consisted in paying over, in pursuance of the order of the court, one-third thereof to the widow, and the remainder in the maintenance and education of his wards, the plaintiff in error, Eliza, included, and investing another portion, to wit: two hundred dollars thereof, in other lands, for their use, described as the E. $\frac{1}{2}$ of N. E. 36, and E. $\frac{1}{2}$ of N. W. 24, T. 14 N., R. 12 W. of the 2nd principal meridian, each tract containing 80 acres, the deeds for which were exhibited, and which the proof shows are very valuable. The plaintiffs in error, in their answer to this bill, deny that these lands were purchased with the proceeds of the sale of this lot, and the deed from Gideon Minor, the guardian, does not recite that they were, nor do they contain any declaration of purposes or uses, but is a deed simply from Gideon Minor and wife, for the consideration of two hundred dollars, to the children of Oliver Minor, deceased, for whom he was guardian, the plaintiff in error, Eliza, included, with a covenant in the deed of special warranty only. The testimony, however, of Mr. Mayo, fully establishes the fact, we think, taken in connection with the settlement of his account as guardian, with the Court of Probate, to which reference has been made, that the lands thus conveyed were purchased with a part of these proceeds. The proof further shows, that plaintiffs in error made a close examination and scrutiny into this amount, and the settlement thereof, and made no complaint of its fairness, or took any exceptions to it whatever.

The proof also establishes the fact that plaintiffs in error have received the full benefit of the tract of land so purchased

for them by their guardian, and have actually sold it for a large sum of money, and the question arises, does not this, in equity, amount to an estoppel? Are not plaintiffs in error estopped from setting up title to this lot, when they have received and enjoyed the benefits of the proceeds of its sale, and it is now in the possession of an innocent purchaser, without notice?

It is a principle, that, though in general, estoppels are odious, as preventing a party from stating the truth, yet they are favored when they promote equity. Comyn's Dig., title " Estoppel."

The application of this principle does not depend, as we understand it, upon any supposed distinction between a void and voidable sale. If the sale be the one or the other, receiving the money, or its proceeds in other valuable property, with a knowledge of the facts, touches the conscience of the party, and therefore establishes the right of the party claiming under such sale, in one case as well as in the other.

The proof in this case shows that the plaintiffs knew all the facts respecting the sale of the lot by their guardian, and the purchase and conveyance of other lands, out of the proceeds.

An equitable estoppel prevents a party from using a title which, in good conscience, ought to enure to the use of another; and if such a case was ever presented, we think this one.

Such estoppels are, and should be, favored in law, honor and conscience, for the truest and best of reasons, that a man, having received a benefit in one character, the value of the thing, or of the property, shall not afterwards receive the thing or property itself, in the same or another character. This principle, so equitable and legal, runs throughout all the transactions and contracts of civilized life. Here the plaintiffs in error received the proceeds of the sale of this lot, a part in the nurture and education of the wife, and a part in eighty acres of land, which they have sold.

Numerous cases, illustrative of this principle, are to be found in the books. We cite a few only, being most convenient for reference.

In 7 Serg. & Rawle, 43, it was held, that an acknowledgment of a deed by a *feme covert*, taken in Lancaster county, before a justice of the peace of York county, for land in York county, is void in Pennsylvania, but if such *feme covert* afterwards joins, as executor, in a suit to recover the purchase money for the land conveyed by such deed, the invalidity of the deed is no objection to the plaintiff's recovery; for having affirmed the deed, by the suit for the purchase money, she had made her election, and will be forever barred, by the recovery, from claiming her dower.

So, taking a balance from the sheriff, being the proceeds of a

sale of land, of one in his own right at the time of the receipt, *estops* the person taking it, from denying that he was a party to the action which resulted in the sale. 11 Penn. State R. 399.

A conveyance fraudulent as to creditors, is rendered valid by the receipt of a dividend under a subsequent assignment of the consideration of the conveyance, with notice to the creditors— they are estopped, by the act of the receipt of the dividend, from alleging the conveyance was fraudulent. 2 ib. 479.

If a legatee, being the executrix, prove the will, and accept a bequest under it, she will thereby be equitably estopped from asserting a claim in hostility to other provisions of the will. 7 Watts & Serg. 238.

And one who accepts a part of the purchase money arising out of a sheriff's sale, is estopped from denying the validity of the sale. *Stroble* v. *Smith*, 8 Watts R. 280.

Where there has been a sheriff's sale on an award without a judgment, proof of an agreement by the heirs of the defendant that the surplus purchase money, after payment of the award, should be applied to the support of the widow of the ancestor, and the plaintiff, who was one of the heirs, and which agreement was executed, and plaintiff stood by when valuable improvements were made by the purchasers, and gave no notice of his claim, is admissible to work an equitable estoppel in favor of the purchaser. 4 Penn. State R. 193.

The case of *Bright* v. *Boyd*, 1 Story C. C. R. 498, is not unlike this case. The court says : " The proceeds of the sale having gone to discharge the debt of· the testator, and so far the lands in the hands of the defendant, Boyd, have been relieved from a charge to which they were liable by law, so that he is ·now enjoying the lands free from a charge, which in conscience and equity he, and he only, and not the purchaser, ought to bear."

So it may be said, in this case, the plaintiff has been nurtured and educated, and other valuable lands purchased for her out of the proceeds of the sale of this lot, of all which she has the sole and exclusive benefit and enjoyment. Is it equitable, is it just, she should have and enjoy all this and the lot also ?

We think it would be great injustice so to decree.

Equity would seem to dictate, if she is to recover the lot, she should be required to refund the purchase money and interest, and pay for the improvements made upon it in good faith, and without notice of this claim.

The duty of compensation in such cases, at least to the extent of the permanent increase of. value by improvements, is alone founded upon the constructive fraud, or gross negligence, or delusive confidence held out by the owner.

Whether this doctrine is applicable to minors, who stand by and make no objection, while transfers and improvements of their property are going on, and make no objection, having a reasonable discretion, from their age, to understand, the court, in *Bright* v. *Boyd,* say, is not so clear.

We take it, that a minor may, and ought to be, bound by his silence, if of age sufficient to know his position in regard to his property. He has no more right to commit a fraud than an adult. This principle of equitable estoppels of this character, applies to infants, as well as adults; to insolvent sureties and guardians, as well as persons acting for themselves; and they have place, as well, when the proceeds arise from a sale by authority of law, as when they spring from the act of the party. *Commonwealth* v. *Sherman's Adm'r,* 6 Penn. State R. 346. In this case, the ancestor, Oliver Minor, died in 1833, seized of this lot. The decree for the sale of the lot passed in 1835. Seven years after, in 1842, when the plaintiff in error, Eliza, was nearly or quite marriageable, the lot was sold under an execution against the purchaser of it, at the guardian's sale. Eliza married in 1846. He held and occupied it ten years, and sold it to George Strain in 1852. He occupied and sold it to the defendant in error, for the consideration of fourteen hundred dollars, in March, 1853.

The ejectment suit is commenced in 1854, and this bill of complaint filed the same year. It appears, then, from the time of the sale of the lot under execution, to the sale to Strain, the plaintiff in error, was of an age and in a condition to know all about this property, and, by her silence, must be considered as having inspired a confidence that she was content with the nurture and education and land she had received out of the proceeds of the sale of the lot. Up to the purchase by the complainant, she had been seven years married, and she and her husband both knew the condition of the property, the various transfers of it, and of the improvements made upon it, without asserting or suggesting any claim.

A strong case is found in 7 Penn. State R. 424, *Smith* v. *Warden,* where a woman of full age, not bound by a judgment on which land was sold, released her interest to the purchasers, and afterwards sued in ejectment. The court say, the receipt of her share of the money was an affirmation that her title had passed to the purchasers by virtue of the sheriff's sale, and she cannot now make a contrary allegation to the injury of those who paid their money on the faith of the conveyance. Where a sale is made of land, no one person can be permitted to receive both the money and the land.

There is great similarity between this case and the one at

bar. The plaintiff in error was not bound by the sale of the lot by the guardian, yet she was nurtured and educated from the proceeds of the sale, and other valuable lands, granted to her, purchased by them. Her act of selling those lands, as it is in proof she has done, is an affirmation that her title to the lot had passed to the purchaser at that sale, and she ought not now be allowed to make a contrary allegation to the injury of a *bona fide* purchaser for a full price under a title which had been acquiesced in by all parties for near twenty years. The plaintiffs in error, with a full knowledge of all the facts, have enjoyed the proceeds of the sale of the lot in lands more valuable now, than the lot itself; and it ought not, in honor, justice, and conscience, now to be in their power to affirm anything against these facts; they should be estopped from asserting any claim to the lot in dispute.

The decree of the Circuit Court is in all things affirmed.

CATON, C. J., dissented.